UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

WILLIAM F. SAVINO and
PETER J. FIORELLA, as Co-Receivers of Muto, *et al.,*

        Plaintiffs,

-vs-

LLOYDS TSB BANK, PLC,

        Defendant.

05-CV-0713E(F)

MEMORANDUM

and

ORDER[1]

---

## INTRODUCTION

In this action, plaintiffs William F. Savino and Peter J. Fiorella[2] (hereinafter "Savino"), as Co-Receivers of several individuals and entities associated with Richard Muto , allege various causes of action including but not limited to breach of contract, breach of third party beneficiary rights, conversion, aiding and abetting conversion and breach of fiduciary duty against the defendant Lloyds TSB Bank, Plc ("Lloyds"). Although still in the initial pleading stage, this action already has a complicated history. Savino commenced this action in New York State Supreme Court, Erie County and Lloyds removed it to this Court on October 11, 2005. On November 14, 2005, Lloyds filed a Motion to Dismiss the Complaint and Savino filed a Motion to Remand. On December 19, 2005, while those Motions were being briefed by the

---

[1] This decision may be cited in whole or in any part.

[2] Peter Fiorella was a co-Receiver at the time this action was initially commenced in May 2005 in New York State Supreme Court. Fiorella was subsequently discharged as co-Receiver on August 5, 2005, leaving William F. Savino as the sole Receiver. In December 2005, Savino filed the Amended Complaint at issue in the instant Motion and included Fiorella as a named Plaintiff despite his having been discharged.

parties, Savino filed an Amended Complaint which mooted Lloyds' Motion to Dismiss and Savino's Motion to Remand.

Thereafter, Lloyds filed a Motion to Dismiss the Amended Complaint or for More Definitive Statement. Savino filed a Memorandum and Exhibits in Opposition to the Motion as well as a proposed second amended complaint to be filed in the event the Court finds the Amended Complaint to be deficient. The proposed second amended complaint, in addition to clarifying Savino's factual allegations, purports to add new factual allegations and causes of action against Lloyds. In fact, Savino's Memorandum in Opposition to the Motion cites to the proposed second amended complaint, rather than to the Amended Complaint. However, the operative pleading at this point in time is the Amended Complaint and the Court will consider Lloyds's arguments in support of its Motion as well as Savino's arguments in opposition only with respect to the allegations contained within the Amended Complaint.

## BACKGROUND

In 2002 and 2003, two civil actions were commenced in New York State Supreme Court, Erie County against Richard Muto and other defendants. Those actions were *Ciura* v. *Muto*, Index No. I2002-6499, and *Matheis* v. *Muto*, Index No. I2003-8802. Approximately 75 plaintiffs in *Ciura* and approximately 54 plaintiffs in *Matheis*, sued, among others, Richard Muto, Deborah Muto, DebRick Trust, Tax & Investment Strategies Trust, Kenneth R. Darnley a/k/a Matthew Business Trust, Robert H. Matheis, Sr. a/k/a Continental Asset Management Trust, Leonard Palumbo a/k/a LenJen Trust, Allen Sinal a/k/a Scaramouche Trust and Scott Prokaska ("the

Muto Defendants"), alleging that they had been defrauded by the Muto Defendants when the Muto Defendants solicited the plaintiffs' investments in a scheme managed by Merit Quest Management International, Ltd. and Hercules Holdings ("the Merit Quest scheme"). The *Matheis* and *Ciura* plaintiffs alleged that, collectively, they were defrauded of millions of dollars through their investments in the Merit Quest scheme. The actions were thereafter consolidated and designated a class action pursuant to New York State law. On June 23, 2003, a default judgment was entered against DebRick Trust, Tax & Investment Strategies Trust and others. In October 2003, Richard and Deborah Muto consented to the entry of a judgment against them in the amount of $15 million dollars.[3]

On December 8, 2004, the State Court appointed William Savino[4] as Judgment Receiver for the Muto Defendants in the consolidated actions.[5] As part of the Receiver's duty, Savino was authorized to prosecute any claims on behalf of the Muto Defendants so that any potential recovery would inure to the benefit of the *Matheis* and *Ciura* plaintiffs. The State Court's Order specified that Savino could prosecute in his name, but on behalf of the Muto Defendants, any action against defendant Lloyds. In May 2005, Savino commenced the instant action in New York State

---

[3] It is unclear as to if or when any judgment was entered against any of the other Muto Defendants purportedly represented by Savino.

[4] As noted *supra*, Peter Fiorella was appointed as co-Receiver with Savino but was discharged on August 5, 2005.

[5] Savino had previously been appointed as temporary receiver for the defendants named in the *Ciura* action. *See* Exhibit A to the Amended Complaint. Savino attached no court order naming him as temporary receiver for the defendants in the *Matheis* action.

Supreme Court, Erie County. Although the action is commenced in Savino's name as Receiver of Muto, Savino purports to represent "the Muto Parties," which group is comprised of the Muto Defendants as well as the plaintiffs in the *Matheis* and *Ciura* actions ("the Muto Plaintiffs").

## FACTS

Savino alleges that, in 1999, the Muto Defendants approached the Muto Plaintiffs about investing in the Merit Quest scheme. Savino alleges that the Muto Parties — *i.e.*, both the Muto Defendants and the Muto Plaintiffs — "were advised"[6] that funds invested in the Merit Quest scheme would be held in a Merit Quest trust account maintained by Lloyds, specifically Trust Account No. 1800 4546 ("the Trust Account") in London, England. As a return on their investment, Savino alleges that the Muto Parties were promised interest payments of at least 25% per month on the funds they invested. Savino further alleges that the "managers" of the Merit Quest scheme provided the Muto Parties with a Trust Agreement[7] wherein Lloyds agreed that all principal funds deposited into the Trust Account "would not be withdrawn unless so demanded by the individual investors who deposited funds in the Trust Account."[8] Am. Compl. ¶18.

The following facts are alleged by Savino only upon information and belief:

---

[6] Savino does not allege how — whether in writing or orally — or by whom the Muto Parties were so advised.

[7] Savino fails to allege the names of the actual parties to the purported Trust Agreement.

[8] Despite Savino's extensive reliance on the Trust Agreement and the allegation that such was "provided" to the Muto Parties, no copy of the purported Trust Agreement was attached to the Amended Complaint.

that, through the Trust Agreement, Lloyds agreed with the Muto Parties that the funds they deposited into the Trust Account would not be withdrawn except upon their directions; that Lloyds provided wire transfer instructions to the Muto Parties[9]; that from 1999 to 2000 the Muto Parties wire transferred funds into the Trust Account in London, England; that the Muto Parties followed the specific wire transfer instructions provided by Lloyds; that Lloyds represented[10] to the Muto Parties that the funds wired into the Trust Account were guaranteed, insured and monitored by Lloyds by agreement; that, when Merit Quest ceased making interest payments in or about October 2000, the Muto Parties requested that Lloyds return the funds they had deposited into the Trust Account; and that, by act or omission, Lloyds misrepresented to the Muto Parties that Merit Quest maintained a Trust Account with Lloyds.

Savino further alleges that Lloyds refused to return the funds deposited by the Muto Parties despite demand for same, that Lloyds failed to follow the specific wiring instructions provided by the Muto Parties, that Lloyds failed to send notice to the sending bank that Lloyds deviated from the specific wiring instructions provided by the Muto Parties and that Lloyds knew or should have known that the Trust Account was not properly executed or established.

---

[9] Savino does not allege how such wire instructions were provided, what the specific wire instructions were and did not attach a copy of the wire instructions purportedly supplied by Lloyds to the Amended Complaint. However, "exemplars" of such instructions are attached to Savino's opposition to this Motion.

[10] Absent are any allegations as to how, when or by whom any such representations were made.

Savino makes several allegations that Lloyds accepted the wire transfers of the Muto Parties into an account not properly executed as a trust account, yet makes contradictory allegations that Lloyds knew or should have known that the managers of the Merit Quest scheme had no account with Lloyds. *Compare* Am. Compl. ¶¶29-32, *with* Am. Compl. ¶33. Further complicating the issue, Savino alleges that, after the funds were deposited by the Muto Parties into the Trust Account, the funds were fraudulently transferred to other unknown accounts — *see* Am. Compl. ¶36 —, yet later alleges that the funds were "actually misdirected by [Lloyds] into an account of the fraudulent, fictitious, non-registered account [sic] of Hercules and from there, upon information and belief, to accounts around the world not authorized by the Muto parties." Am. Compl. ¶39.

## DISCUSSION

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCvP"), the Court "must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Phelps* v. *Kapnolas*, 308 F.3d 180 (2d Cir. 2002). The motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). "While a complaint attacked by a [FRCvP] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.* v. *Twombly*, – U.S. – , 127 S. Ct. 1955, 1964-65 (2007) (internal citation and quotation omitted). Accordingly, the Court is not concerned with whether plaintiff may ultimately succeed on his claims but must "assess the legal feasibility of the complaint." *Cooper* v. *Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).

With certain limited exceptions, the record on a motion to dismiss is limited to the complaint itself. *See Faulkner* v. *Beer*, 463 F.3d 130, 134 (2d Cir. 2006). One such exception is that the Court may consider, on a motion to dismiss, items attached to the complaint, incorporated therein by reference, or which were relied upon in the drafting of the complaint. *See e.g.*, *Cortec Indus., Inc.* v. *Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

A. <u>Savino's Standing to Sue</u>

The Amended Complaint purports to assert claims on behalf of the "Muto Parties" which includes both the Muto Defendants and the Muto Plaintiffs. Lloyds argues that, because Savino lacks standing to sue on behalf of the Muto Plaintiffs, he cannot sue on behalf of the Muto Parties as so defined and thus the Amended Complaint must be dismissed. Savino argues that he was granted authority to prosecute the actions by Order of New York State Supreme Court. Savino further argues that, even if he lacks standing to sue on behalf of the Muto Plaintiffs, the correct procedure is not to dismiss for lack of standing, but rather to allow the Muto Plaintiffs an opportunity to intervene on their own behalf.

Lloyds is correct in that no Order of the New York State Supreme Court authorizes Savino to prosecute an action against Lloyds on behalf of the Muto Plaintiffs. In an Order granted on March 23, 2004 and filed on March 25, 2004, New York State Supreme Court Justice Joseph G. Makowski ordered that:

> "*nunc pro tunc* as of October 24, 2002, that the Co-Receivers are granted the authority to assert, prosecute and/or sue the claims and legal causes of actions in their names on behalf of the [Muto Plaintiffs] against Pensco Pension Services a/k/a Pensco, Inc., Merit Quest International, Ltd.; All About Trading (D. Barry Tamres); Delmer C. Gowing, III, Delmer C. Gowing III, P.A., and J.P. Morgan Chase & Co. (successor in interest to Chase Manhattan Bank) $_{***}$."

March 23, 2004 Order attached to Am. Compl. as part of Exhibit A. This defendant, Lloyds TSB Bank, Plc., is not included in that list of entities and thus, regardless of his ability to prosecute the action on behalf of the Muto Defendants, Savino is not the real party in interest and has no standing to sue the claims on behalf of the Muto Plaintiffs. Despite his argument in opposition to Lloyds Motion, Savino implicitly recognized such fact in the Amended Complaint. *See* Am. Compl. ¶2 ("By order of the State Court, dated March 23, 2004, William F. Savino is granted legal 'authority to assert, prosecute and/or sue the claims and legal causes of action in their [sic] names on behalf of the [plaintiffs of the Muto State Actions] against Merit Quest International, Ltd."). Savino lacks standing to pursue the instant action against Lloyds on behalf of the Muto Plaintiffs, and thus he lacks standing to assert such claims on behalf of the group titled the "Muto Parties." Savino is, however, the real party in interest with respect to the claims of the Muto Defendants.

Savino argues that his lack of standing does not require the dismissal of the action but merely an opportunity for the Muto Plaintiffs to join in or ratify the commencement of the action.  Lloyds argues that no such opportunity should be given because the Muto Plaintiffs have had ample notice that Lloyds contested Savino's standing and, despite having such notice, the Muto Plaintiffs have failed to take any steps to intervene in this action to date.

FRCvP 17(a) provides in pertinent part that

"No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest $***$."

The Court concludes that, in light of its consideration of the remainder of the claims as they pertain to the Muto Defendants, to allow the Muto Plaintiffs, or any of them individually,[11] to join in the Amended Complaint or to ratify the commencement of the action by the Amended Complaint would be futile.  As discussed *infra*, the claims as pleaded in the Amended Complaint must be dismissed.

B.  Statute of Limitations

Lloyds argues that the Muto Defendants' claims for breach of fiduciary duty, conversion and aiding and abetting conversion are time barred.  Savino argues that under English law, such claims are timely and are not time barred.

---

[11] The Court notes that although the Muto Plaintiffs were designated as a class in New York State Court, they have neither sought nor obtained any such classification in this action. Thus, should the Muto Plaintiffs seek to intervene as a class, they would have to satisfy the requirements for and properly seek designation as such under the FRCvP.

- 9 -

As Lloyds correctly notes, "where jurisdiction rests upon diversity of citizenship, a federal court in New York must apply the New York choice-of-law rules and statutes of limitations." *Stuart* v. *Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998). Under New York's Civil Practice Law and Rules ("CPLR") §202, the claims of a non-New York domiciliary which are brought in New York will be time barred if untimely under the shorter of either New York's limitations period or the limitations period of the jurisdiction in which the claim accrued. *See* N.Y. CPLR §202. The purported plaintiff here, however, is a New York domiciliary and, as such, the claims are adjudged under the applicable New York statute of limitations. *See Hughes* v. *Lasalle Bank, N.A.*, 419 F. Supp. 2d 605, 611 (S.D.N.Y. 2006).

    1.  <u>Breach of Fiduciary Duty</u> (Claim 1)

Savino alleges that Lloyds owed the Muto Defendants fiduciary duties and seeks compensatory damages as a result of the breach of those duties. Under New York law, a claim of breach of fiduciary duty for which a plaintiff seeks only legal and not equitable relief must be brought within three years from the accrual of the claim. *See Hughes* v. *LaSalleBank, N.A.*, 419 F. Supp. 2d 605, 612 (S.D.N.Y. 2006). A claim for breach of fiduciary duty accrues upon the occurrence of the alleged wrongful conduct. *Ibid*. (*citing Steinhardt* v. *Johns-Manville Corp.*, 54 N.Y.2d 1008, 446 N.Y.S.2d 244, 246 (1981)).

Arguably, the cause of action could have accrued on the date on which Lloyds allegedly failed to honor the wiring instructions and failed to deposit the funds in a

trust account.  Savino, however, has failed to allege any specific or approximate date on which that occurred.  The latest the claim could have accrued, however, is when the Muto Defendants allegedly demanded that Lloyds return their funds and Lloyds allegedly refused to do so.  While no specific date is alleged with respect to those actions, Savino does assert that such took place in 2000.  Assuming that such took place at the latest on December 31, 2000, the claims for breach of fiduciary duty are time-barred because this action was commenced more than three years after December 31, 2000.

      2. <u>Conversion and Aiding and Abetting Conversion</u> (Claims 3 and 4)

New York's statutory period of limitations for conversion claims is three years which begins to run from the date of conversion.  *See* N.Y. CPLR §214(3).  Again assuming that the conversion took place at the latest on the date on which Lloyds allegedly refused to return the invested funds, according to the allegations in the Amended Complaint such took place, at the latest, on December 31, 2000.  Again, as this lawsuit was not commenced within three years of that date, the claims for conversion and aiding and abetting conversion are time-barred.

C. Contract Claims

The remainder of Savino's claims against Lloyds sound in contract. Remaining are claims for breach of contract, breach of implied contract, breach of third party beneficiary rights, money had and received, unjust enrichment and equitable estoppel. Lloyds argues that the contract claims should be dismissed because no contract is formed between a receiving bank and a remitting bank's customer, although a contract can be formed between the two banks themselves. Lloyds also argues that the claims are deficient because they fail to sufficiently allege the formation of a contract, the terms of the contract and/or the specific term of the contract that was allegedly breached by Lloyds. Finally, Lloyds argues that Savino's claim for promissory estoppel should be dismissed because such is a legal doctrine and does not itself create a cause of action.

The crux of Savino's contract claims is that a Trust Account No. 1800 4546 existed at Lloyds pursuant to a Trust Agreement entered into by Lloyds and the managers of the Merit Quest scheme. Savino alleges that the Muto Defendants became third party beneficiaries of that Trust Agreement and, when they followed Lloyds' alleged wiring instructions and allegedly deposited funds into that Trust Account, the Muto Defendants entered into individual contracts with Lloyds and justifiably relied on Lloyds representations to hold their funds in trust. In opposition to Lloyds's Motion to Dismiss the Amended Complaint, Savino has attached two "exemplars" of such wiring instructions to Lloyds. Although these exemplars were

not attached to the Amended Complaint, they were incorporated into the Amended Complaint by reference and the Court will consider them.

The attached wiring instruction exemplars directly conflict with the allegations contained in the Amended Complaint. First, as Lloyds correctly notes, the alleged instructions are not directed to Lloyds. The so-called instructions are receipts for payment orders directed to two investors' banks, and a general instruction sheet — apparently provided by the schemers — directing the investors as to how to wire the funds. These instructions indicate that the investors' banks were not told to wire funds into Trust Account 1800 4546. On the contrary, on both receipts, as well as on the instruction sheet, the beneficiary is clearly listed as Hercules Holdings and the account to which the funds were to be wired is listed as Account # 11313150. The only instruction pertaining to Trust Account 1800 4546 is a further reference which is directed to the beneficiary, Hercules Holdings, not Lloyds. It is clear that, contrary to the allegations contained in the Amended Complaint, the investors did not have the funds wired directly into the purported Trust Account, but rather into Account # 11313150 in the name of Hercules Holdings. There is no allegation that Account # 11313150 was intended to be or was represented by Lloyds or anyone else to be a trust account. Furthermore, there is no allegation that Lloyds failed to deposit the funds into Account # 11313150.

The Court concludes that Savino's claims for breach of third party beneficiary rights (claim 2), breach of contract (claim 6), breach of implied contract (claim 7),

money had and received (claim 8), equitable estoppel (claim 9), and unjust enrichment (claim 10) should be dismissed.[12]

Accordingly, it is **ORDERED** that Lloyds' Motion to Dismiss the Amended Complaint is GRANTED, the Amended Complaint is dismissed and the Clerk of the Court is directed to take all steps necessary to close the case.

DATED:    Buffalo, N.Y.

          June 8, 2007

                                          /s/ John T. Elfvin
                                          JOHN T. ELFVIN
                                          S.U.S.D.J.

---

[12]In anticipation that the Amended Complaint may be dismissed in part or in whole, Savino attached to his opposition a proposed second amended complaint. The proposed pleading does not cure any of the deficiencies identified by the Court. Moreover, it appears that the proposed pleading is based on the same factual scenario and asserts the same causes of action. Savino has already had one opportunity to amend the complaint in this case and has proposed a second attempt which would be equally unsuccessful. Although leave to amend should be liberally granted, the Court is not obligated to allow a plaintiff an infinite number of opportunities to successfully plead a claim. Accordingly, the Court will not grant leave to amend in this case.